RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12-22-14
                    cyt

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

---

**ASHLEY PRICE**                                    **CIV. ACTION NO. 10-904**

**VERSUS**                                               **JUDGE TRIMBLE**

**AMERICAN EAGLE AIRLINES, INC.**              **MAGISTRATE JUDGE KIRK**

---

## <u>MEMORANDUM RULING</u>

Before the court is a motion filed by American Eagle Airlines, Inc. ("American Eagle" or "Defendant") seeking dismissal of all federal and state claims against it in the above-captioned civil rights suit.[1]  For the reasons expressed herein below, the court finds that Defendant's motion should be **GRANTED** in full.

I.      **BACKGROUND**

        **Relevant Facts**

This suit is brought by Ashley Price ("Plaintiff" or "Price") against her former employer American Eagle alleging violation of her civil rights under both Louisiana and federal law.[2]  Plaintiff was hired by American Eagle as a station agent on December 6, 2006.[3]  Plaintiff was assigned to American Eagle's location at Alexandria International Airport ("AEX") in Alexandria, Louisiana.[4]

---

[1] R. 35.
[2] R. 1 at ¶ 4.
[3] Id. at ¶ 5.
[4] Id. at ¶ 5.

1

Plaintiff's duties as a station agent included, among other things, checking passengers in for flights, assisting with ticketing or rebooking issues and the lifting and transport of luggage to and from various locations in the airport.[5]  As a station agent, plaintiff was also required to load and unload luggage from the aircraft.[6]

Plaintiff became pregnant in 2008 and asserts that, though she didn't formally request what American Eagle refers to as "light duty status" during that pregnancy, her supervisor, Jesse Tobin ("Tobin"), instructed her not to lift heavy bags.[7]  Plaintiff asserts that this reduction in duties by Tobin was never reduced to writing.[8]  Plaintiff suffered an unfortunate miscarriage in October of 2008.[9]

Plaintiff became pregnant again in 2009.[10]  Plaintiff asserts that Tobin again put plaintiff on light duty during this pregnancy.[11]  Tobin was replaced as station manager in June 2009 by Ms. Nilsa Moret ("Moret").  Plaintiff alleges that, under Moret's supervision, she was denied light duty status and told that if she could not perform the full duties of her station agent job, she would need to go on unpaid maternity leave until the baby was born.[12]  Plaintiff alleges that she was forced to produce documentation from her doctor stating that she could perform the duties of her job with no restrictions.[13]  Plaintiff states that she feared that, if she did not produce the requested documentation, she would be forced to take unpaid leave, which she

---

[5] Plaintiff's deposition [R. 35-3] at 49:5 – 50:22.
[6] Id.
[7] Id. at 68:10 – 69:15.
[8] Id. at 69:8-15.
[9] Id. at 69:16-21.
[10] Id. at 70:11-15; R. 1 at ¶ 7.
[11] Plaintiff's Statement of Material Facts (contained within plaintiff's Memorandum in Opposition to Motio) [R. 43] at p. 1.
[12] R. 35-3 at 72:9-15.
[13] Id. at 74:9 – 78:2.

could not afford.[14]  Plaintiff alleges that several of her coworkers harassed her and accused her of "milking" her pregnancy and faking the difficulties of her pregnancy.[15]  Plaintiff asserts that she was made to lift heavy bags against her wishes.[16]

On October 22, 2009, plaintiff was scheduled to fly to Dallas for training.  Plaintiff reported to work, but was feeling ill and spoke with several coworkers about her discomfort and her desire to rebook her training for the following day.[17]  Plaintiff did not speak to Moret about her condition and, instead, boarded her flight to Dallas and attended training as scheduled.[18]

Plaintiff was admitted to the hospital that evening after returning from Dallas with preeclampsia and delivered her daughter prematurely two days later.[19]  Plaintiff alleges that she corresponded with Moret via email, keeping her updated as to when plaintiff planned to begin work again.[20]  Plaintiff alleges that Moret "became upset and refused to respond to any [of her] requests…" at which time she contacted Joe Overbeck, Moret's supervisor to file a complaint about Moret's conduct.[21]  Plaintiff resigned her position in March of 2010.[22]

Plaintiff asserts that she filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue, thus exhausting her administrative remedies prior to filing suit in this court.  Plaintiff filed the instant suit in this court on June 8, 2010, asserting violations of Louisiana's Employment Discrimination

---

[14] Id.
[15] R. 43 at p. 9.
[16] R. 1 at ¶¶ 14-15.
[17] R. 35-3 at 87:5 – 89:10.
[18] Id.
[19] R. 1 at ¶¶ 19-20; R. 43 at p. 10.
[20] R. 43 at p. 4; R. 35-3 at 96:14-114:13.
[21] R. 43 at p. 4; R. 35-3 at 120-121.
[22] R. 1 at ¶ 23.

Law (La. R.S. 23:301, et seq.) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.) as amended by the Pregnancy Discrimination Act.  Plaintiff asserts employment discrimination claims under these statutes in the form of hostile work environment and constructive discharge.

American Eagle filed the instant motion for summary judgment, seeking dismissal of all claims against it on the basis that plaintiff's claims fail as a matter of law and no genuine fact dispute exists regarding its entitlement to judgment on these claims.  All briefs have been received in this matter and the court finds the motion is now properly before the court for decision.[23]

### Applicable Standard

Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law.  The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the record, including depositions, documents and affidavits.[24]  The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence which, when taken as true for the purposes of the motion, would provide a

---

[23] The court notes that Plaintiff's Memorandum in Opposition was declared deficient by the Clerk of Court due to counsel's failure to include a table of cases, statutes and authorities as required under LR 7.8.  Notice of the deficiency was issued on October 23, 2014, but remains uncured by Plaintiff as of the date of this ruling.  See, R. 44.  Additionally, counsel neglected to forward to chambers courtesy copies of her memorandum in opposition as required by the court's Standing Order Governing Pretrial Procedure and the Notice of Motion Setting issued to the parties on September 24, 2014.  See, R. 40.  **It is within the purview of this court to strike Plaintiff's deficient filing from the record in this case or to refuse to take up the motion until the court's order requiring courtesy copies is satisfied.  The court has not done so in this case, but cautions counsel that this courtesy will not be extended in the future.**
[24] Fed. R. Civ. P. 56(c)(1)(A).

4

legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[25]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claims.[26]  In so doing, the nomoving party establishes the existence of a genuine issue of material fact for trial.  The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[27]   A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[28]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings.   If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[29]

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[30] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are

---

[25] Celotex Corp v. Catrett, 477 U.S. 317, 2553 – 54 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995); Shotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992), cert. denied 506 U.S. 832 (1992).
[26] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).
[27] Celotex, 477 U.S. at 325.
[28] Id.
[29] Id. at 322.
[30] Fed. R. Civ. P. 56(c)(2); Salas v. Carptener, 980 F.2d 299, 305 (5th Cir. 1992) quoting Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).

"unsubstantiated assertions" and "conclusory allegations[.]"[31]  The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[32]

## II.    ANALYSIS

### Exhaustion of Administrative Remedies

Plaintiffs alleging employment discrimination must exhaust administrative remedies as a "precondition" of filing suit in federal court.[33]  Exhaustion occurs when a plaintiff timely files a charge of discrimination with the EEOC and receives a statutory notice of right to sue.[34]

Defendant cites Federal Express Corporation v. Holowecki,[35] a 2008 decision by the United States Supreme Court, as authority for the conclusion that the instant plaintiff did not exhaust her administrative remedies and dismissal is warranted on that basis.  In Holowecki, the Court took up the issue of whether or not a plaintiff's EEOC intake questionnaire and attached affidavit were sufficient under applicable EEOC regulations to constitute a "charge" within the meaning of Title VII's exhaustion requirement.  Reviewing the five key pieces of information that a charge should contain according to 29 C.F.R. § 1626.3, the operative regulation, the court found that, taken together, the questionnaire and the affidavit were sufficient to constitute the requisite "charge" and, thus, the exhaustion requirement was fulfilled.

---

[31] Little, 37 F.3d at 1075, citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), Lujan v. National Wildlife Federation, 497 U.S. 871, 871-73 (1986); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994).
[32] Lujan, 497 U.S. at 888.
[33] 42 U.S.C. § 2000e-5(f)(1); Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002) citing Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996).
[34] Taylor, 296 F.3d at 379, citing Dao, 96 F.3d at 788-89.
[35] 552 U.S. 389 (2008).

Defendant points to language by the Court noting that, were it forced to consider the questionnaire alone, it likely would not have been able to reach the same result, considering the requirements of the regulation.  Defendant asserts that Price failed to attach any affidavit to her questionnaire and that, standing alone, her intake questionnaire is insufficient to constitute a charge for exhaustion purposes, particularly on the basis that it fails to ask for remedial relief.[36]  Defendant asserts that such relief could not have been sought since Plaintiff testified that, at the time she completed the questionnaire, she planned to return to work and was no longer in need of light duty, having delivered her child months earlier.[37]

The court has reviewed the intake questionnaire at issue and disagrees with American Eagle's characterization of it in this matter.  First, applying the requirements discussed in Holowecki, plaintiff's questionnaire contains the names, addresses and telephone numbers of both the charging party and her employer, against whom the claim of discrimination is made.  Plaintiff's questionnaire contains a statement of facts alleging facts she believes to be discriminatory at page 2, question 6.  Plaintiff's questionnaire contains a statement regarding the number of employees employed by American Eagle at page 1, question 2.  Plaintiff's questionnaire contains a statement regarding whether or not she has instituted state proceedings as to the allegations made in the questionnaire at page 3, question 14.  Thus, we find that Plaintiff's questionnaire clearly meets the requirements of 29 C.F.R. § 1626.3.

We also disagree with Defendant's argument that Plaintiff's questionnaire fails to ask the EEOC to take action based on her allegations of discrimination.  We agree that, by selecting Box 2, Plaintiff is electing to pursue her rights.  Evidence before the court shows that the EEOC

---

[36] R. 35-2 at p. 9-10..
[37] Id.

provided American Eagle with a Notice of Charge of Discrimination on February 22, 2010, requiring no action from Defendant at that time.[38]  Moreover, it appears that the EEOC assigned a charge number (461-2010-00748) to this matter and that Plaintiff was issued a Notice of Dismissal and Right to Sue on April 28, 2010.[39]  Thus, we have no basis upon which to deny that the questionnaire, clearly construed by the investigating agency to be a charge, is insufficient for that purpose.

Accordingly, we find that Plaintiff has demonstrated timely exhaustion of administrative remedies as a precondition to filing the instant suit.

**Plaintiff's Prima Facie Case of Pregnancy Discrimination**

Defendant's motion next asserts that Plaintiff's claims of pregnancy discrimination fail as a matter of law because Plaintiff is unable to establish the requisite prima facie case under applicable law and jurisprudence.[40]

Title VII prohibits various forms of employment discrimination based on factors such as race, religion and sex.[41]  The Pregnancy Discrimination Act ("PDA") of 1978[42] amends Title VII in order to clarify that discrimination based on a woman's pregnancy or pregnancy-related medical condition is, in fact, discrimination based on sex and, therefore, a violation of Title VII.[43] Title VII claims made without direct evidence of discrimination are evaluated under the familiar

---

[38] R. 35-5 at p. 27 of 30.
[39] Id. at p. 23 of 30.
[40] R. 35-2 at p. 10, et seq.
[41] 42 U.S.C. § 2000e-2(a)(1).
[42] 42 U.S.C. § 2000e(k).
[43] Int'l. Union v. Johnson Controls, 499 U.S. 187, 198-99 (1991) quoting Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 684 (1983).

McDonnell Douglas burden shifting analysis.[44]  Under this analysis, the burden first rests with

the plaintiff to present a prima facie case of discrimination which is somewhat tailored to the

particular charge of discrimination made in each case.[45]  Once the plaintiff has established a

prima facie case of discrimination, the burden shifts to the defendant employer to articulate a

legitimate, non-discriminatory reason for the adverse employment action.  This is a burden of

production only.  If the employer successfully rebuts the plaintiff's prima facie case, the burden

again shifts to the plaintiff to show by a preponderance of the evidence that the reason offered

by the defendant is merely pretext for discrimination.[46]  At all times, the ultimate burden of

persuasion remains with the plaintiff.

In order to establish a prima facie case of disparate treatment discrimination based on

pregnancy, plaintiff must show that: (1) she is a member of a protected class; (2) she was

qualified for her position; (3) she suffered an adverse employment action and (4) she was

treated less favorably than others who were similarly situated.[47]  Defendant asserts that

Plaintiff is unable to show the existence of a question of fact as to the third and fourth

elements of this claim.[48]

Defendant first asserts that Plaintiff suffered no adverse employment action because

her resignation does not constitute constructive discharge.  Generally, an "adverse employment

---

[44] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973); Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003).
[45] Id.
[46] Bregon v. Autonation USA Corp., 128 Fed. Appx. 358, 360 (5th Cir. 2005) quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000).
[47] St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Nasti v. CIBA Specialty Chem. Corp., 492 F.3d 589, 593 (5th Cir. 2007).
[48] R. 35-2 at pp. 10-17.

action" is defined as a termination, reduction in pay or benefits, refusal to hire or promote or a

demotion.[49]  Where, as here, plaintiff claims constructive discharge, plaintiff must show that

> (1) she suffered harassment or discrimination so intolerable that a
> reasonable person in the same position would have felt
> compelled to resign…; and (2) the employee's reaction to the
> workplace situation – that is, …her decision to resign – was
> reasonable give the totality of the circumstances…"[50]

In Young v. Southwestern Savings and Loan Association, the Fifth Circuit Court of

Appeals phrased the doctrine of constructive discharge as follows:

> The general rule is that if the employer deliberately makes an
> employee's working conditions so intolerable that the employee
> is forced into an involuntary resignation, then the employer has
> encompassed a constructive discharge and is liable for any illegal
> conduct involved therein as if it had formally discharged the
> aggrieved employee.[51]

Constructive discharge requires a showing of harassment greater than that sufficient to

support a hostile work environment claim.[52]   To that end, plaintiff must show, not only

discrimination, but also aggravating factors, such as

> (1) demotion; (2) reduction in salary; (3) reduction in job
> responsibilities; (4) reassignment to menial or degrading work; (5)
> reassignment to work under a younger supervisor; (6) badgering,
> harassment, or humiliation by the employer calculated to
> encourage the employee's resignation; or (7) offers of early
> retirement…[53]

Defendant asserts that plaintiff's only allegations in this suit are that (1) she was

required to perform the duties of her job, such as lifting bags and attending training; and (2)

that on three occasions her co-workers harassed her about her pregnancy.  Defendant asserts

---

[49] Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Watts v. Kroger Co., 170 F.3d 505, 510 (5th Cir. 1999).
[50] PA State Police v. Suders, 542 U.S. 129 (2004).
[51] 509 F.2d 140, 144 (5th Cir. 1975).
[52] Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998).
[53] Barrow v. New Orleans Steamship Association, 10 F.3d 292 (5th Cir. 1994).

that these allegations, even when taken as true for purposes of this motion, do not rise to the level of harassment under which a reasonable person would feel compelled to resign their employment.  Defendant asserts that these allegations do not concern behavior "so intolerable" as to meet the "reasonable person" standard required under the jurisprudence.[54]

Plaintiff alleges that "she has sufficient evidence that the Defendant, through Moret, MacMillan and Young as well as other fellow coworkers, created a work environment designed specifically to compel her to resign by altering the terms and conditions of her employment."[55] Plaintiff's memorandum in opposition to the motion asserts that several of Plaintiff's coworkers felt that Plaintiff was "milking" her pregnancy to get out of a portion of her station agent duties or that she was "faking" her illness on the morning of her training in Dallas.[56]  Plaintiff also asserts that Moret required her to submit documentation from her doctor stating that she was not subject to any restrictions on her duties at work.[57]  Plaintiff further asserts that Moret was "combative" with her in the months following her daughter's birth, refusing to respond to emails and generally "[making] Plaintiff's life difficult."[58]

Defendant cites a multitude of Fifth Circuit cases in which the appellate court found that the harassment complained of by the plaintiff did not rise to the level which would induce a reasonable person to resign their job.  Defendant argues that, comparatively, Plaintiff's allegations fall short of even those fact patterns previously rejected by the Fifth Circuit in constructive discharge cases.  The court agrees.

---

[54] R. 35-2 at pp. 11-13.
[55] R. 43 at p. 9.
[56] Id. at pp. 2, 9, 10, 11.
[57] Id. at p. 9.
[58] Id. at p. 43.

Plaintiff's only means of making out a constructive discharge claim in this case is under factor six, regarding "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation."  The cases cited by Defendant each involve allegations of conduct far exceeding the severity of that alleged by Price in this case.[59]  Additionally, in Landgraf v. USI Film Products, the Fifth Circuit affirmed a district court's dismissal of plaintiff's constructive discharge claim where the district court described the harassment at issue as "continuous and repeated inappropriate verbal comments and physical contact."[60]  The court found that this sexual harassment did not constitute harassment of a "severe and pervasive" nature such as would compel a reasonable person to resign their employment and, thus, Landgraf's resignation did not constitute constructive discharge.

In response to the jurisprudence cited by Defendant, Plaintiff asserts that her coworker Dylon Vanmol, another station agent, muttered under his breath that plaintiff was "milking" her pregnancy for decreased responsibilities.[61]  Plaintiff also asserts that, in June of 2009, Moret, Marilyn Young and Angela MacMillan, the lead station agent, confronted her about the fact that no employees were permitted to be on light duty status and "that if she could not work, she would be placed on maternity leave without pay."[62]  Plaintiff asserts that Moret required her to submit documentation from the physician following this June 2009 incident proving that she could perform the duties of her job with no restrictions.[63]  Plaintiff alleges that she was

---

[59] See, e.g., Stover v. Hattiesburg Pub. Sch. Dist., 549 F.3d 985 (5th Cir. 2008) (plaintiff deprived of equal career development opportunities as her comparator; subjected to shouting and violent confrontations with her supervisor; excluded from "prestigious retreats" and denied comp time offered to others) and other cases cited at R. 47, p. 6, n. 12.
[60] 968, F.2d 427, 428 (5th Cir. 1992).
[61] R. 43 at p. 2; R. 43-1 at 55:6-17.
[62] R. 43 at p. 2; R. 43-1 at 72.
[63] R. 43 at p. 2.

reprimanded on September 30, 2009 for making an erroneous gate announcement, but other employees who make similar mistakes often were not reprimanded.[64]  Plaintiff asserts that her coworker Young harassed her by expressing the view that Plaintiff was "faking" her illness on October 23, 2009 in order to get out of having to report to Dallas for training.  Plaintiff felt that, had she not reported for training on that day, Young would have reported her to Moret and she might have been fired.[65]  Finally, Plaintiff asserts that Moret was not responsive to her emails, wherein Plaintiff sought to coordinate her return to work after the birth of her child.[66]

Taken as true, these allegations do not, as a matter of law, rise to the level of harassment necessary to support a claim of constructive discharge under Fifth Circuit jurisprudence.  None of the allegations advanced by plaintiff, whether considered alone or as a group, amounts to "severe and pervasive" harassment.  Plaintiff cites no cases in which allegations akin to those made in this case were construed by the court to be sufficient to support a constructive discharge claim.  Accordingly, we agree that Plaintiff fails to allege facts which, when taken as true, fulfill the third element of her constructive discharge claim.

Defendant also asserts that Plaintiff is unable to fulfill the fourth element of her constructive discharge claim because she is unable to identify similarly situated persons who were treated more favorably by her employer.[67]  As argued by the Defendant, the PDA imposes upon employer the duty to treat pregnant employees the same as it does non-pregnant employees, but does not impose upon them an obligation to show preference to pregnant

---

[64] R. 43 at pp. 2-3; R. 43-1 at 63-65.
[65] R. 43 at pp. 3-4.
[66] R. 43 at p. 12.
[67] R. 35 at pp. 13-15.

employees.[68]  To this end, Plaintiff must present evidence that American Eagle treated one or more non-pregnant employees less favorably than her and that the disparity in treatment was based on her pregnancy.[69]

In response to Defendant's motion, Plaintiff asserts that Marilyn Young ("Young"), a fellow station agent who suffered from carpal tunnel syndrome, is an example of a similarly-situated employee who was treated more favorably.  Specifically, Plaintiff alleges that Young wore an arm brace; was allowed to work as a station agent despite the fact that Young's condition imposed restrictions on her ability to lift bags; and was allowed to refrain from lifting bags weighing more than ten (10) pounds.[70]

Defendant asserts that Plaintiff fails to meet her burden of proof because Young's grant of light duty status was given by Plaintiff's former supervisor, Tobin – not Moret.[71]  Defendant asserts that American Eagle does not have a company-wide policy regarding access to light duty status and, instead, permits each supervisor to make such determinations.[72]

The court has reviewed the Declaration of Linda Behrmann ("Behrmann"), the Human Resources Director for American Eagle, produced by Defendant at R. 35-4.  In it, Behrmann

---

[68] Urbano v. Continental Airlines, 138 F.3d 204 (5th Cir. 1998) (finding that Continental's policy of extending light duty status only to those employees who suffered on-the-job injury did not violate the PDA since it was applied equally to pregnant and non-pregnant employees).

[69] Arismendez v. Nightingale Home Health Care, Inc., 493 F.3d 602 (5th Cir. 2007); Laxton v. Gap, Inc., 333 F.3d 572 (5th Cir. 2003); Wallace v. Methodist Hosp. Sys., 271 F.3d 212 (5th Cir. 2001).

[70] R. 43 at p. 11.  The court notes that Plaintiff's Responses to Interrogatories, EEOC intake questionnaire and deposition testimony do, as argued by Defendant, seem to suggest that she considers Kenisha Thomas and Kelly Vickers suitable comparators for the purposes of prong four of her constructive discharge claim. In response to Defendant's motion, however, Plaintiff does not assert that Thomas or Vickers are comparators, focusing solely on Young.  See, R. 35-5 at p. 1, R. 35-3 at p. 186 and R. 43 at pp. 10-11.  As argued by Defendant, the fact that these women were also pregnant and afforded light duty status under Tobin does not fulfill Plaintiff's fourth prong burden as to constructive discharge, since the court must consider whether there is any evidence that the employer treated the Plaintiff less favorably than other non-pregnant employees simply because she was pregnant.

[71] R. 35 at p. 14.

[72] Id.

14

declares that she was the HR Specialist in charge of American Eagle's Alexandria, Louisiana station during the time frame at issue in this case.[73]  Behrmann declares that employment records indicate that Young was placed on light duty status due to carpal tunnel syndrome by Tobin from April 8, 2009 until May 8, 2009 based on a physician's note temporarily restricting her from certain objects.[74]  Behrmann adds that Young's only request for light duty status was made to Tobin and her records indicate that she was not placed on light duty status at any other time.[75]

Given American Eagle's policy of allowing its station managers to exercise their discretion in allowing light duty status, we agree that evidence showing that Young was afforded light duty status under Tobin does not fulfill Plaintiff's burden, since she alleges that denial of light duty status by Moret, not Tobin, was discriminatory.  This evidence does not demonstrate that Young was treated more favorably by Moret because she had a disability which was not due to pregnancy.  Thus, we find that Plaintiff fails to satisfy the fourth prong of her claim for constructive discharge.

Defendant's motion next asserts that, even if this court were to find that Plaintiff demonstrated all four (4) elements of her prima facie case of discrimination, including the finding that her resignation constituted an adverse employment action under the constructive discharge theory, Defendant is able to rebut any presumption of discrimination regarding its denial of light duty status in this case.  As stated above, Defendant offers evidence that American Eagle does not have a company-wide policy regarding entitlement to light duty

---

[73] R. 35-4 at ¶ 2.
[74] Id. at ¶ 6.
[75] Id. at ¶ 6.

status, leaving this issue to the discretion of individual station managers.[76]  Station managers were instructed to apply a "consistent policy for all injuries and/or temporary impairments."[77]  In the event that a manager did not have light duty work available and an employee was unable to perform the full duties of his or her job, the employee "could be accommodated with a leave of absence to which he or she might otherwise be entitled."[78]

Defendant asserts that Moret, exercising her discretion as a Station Manager, chose not to allow light duty status for any employee under any circumstance.[79]  Plaintiff's memorandum in opposition states, but offers no evidence otherwise, that Moret actually did allow Plaintiff to work under light duty status for two (2) weeks after she took over as Station Manager, but was persuaded by other station agents to revoke Plaintiff's light duty status.[80]

As argued by Defendant and cited above, the PDA does not require an employer like American Eagle to change the essential duties of a job or find compatible work for a pregnant employee who is unable to perform the duties of her job.  It only requires that a pregnant employee be treated in exactly the same manner as other non-pregnant employees.[81]  Plaintiff's own testimony seems to suggest that she felt she was unable to perform the essential duties of station agent.[82]  Though the court is sympathetic to Plaintiff's desire to continue receiving her pay during her pregnancy, it is not a constitutional violation for Plaintiff's employer to insist that, if she is unable to perform the duties of her job, she must take unpaid leave until she is capable of returning to these duties, as long as that policy is applied to

---

[76] R. 35-4 at ¶ 5.
[77] Id.
[78] Id.
[79] R. 35-2 at p. 14.
[80] R. 43 at p. 11.
[81] Urbano v. Continental Airlines, 138 F.3d 204 (5th Cir. 1998).
[82] R. 35-3 at 77-78.

pregnant and non-pregnant employees alike.[83]  Plaintiff presents no evidence that Moret

applied this policy unequally.

Based on the foregoing, we find that, even if the court were to have found that Plaintiff

met her prima facie burden, Defendant has successfully articulated a legitimate, non-

discriminatory motive for the denial of light duty status in this case, in response to which

Plaintiff offers no evidence of pretext.

Based on our reasoning above, Plaintiff's pregnancy discrimination claim based on

constructive discharge theory fails as a matter of law and, as argued by Defendant, should be

dismissed with prejudice.  Defendant's motion will be granted as to this claim.

**Plaintiff's Hostile Work Environment Claim**

Under the applicable <u>McDonnell Douglas</u> burden-shifting analysis, Plaintiff must

establish the following five (5) elements in order to fulfill her primary burden of proof regarding

her Title VII hostile work environment claim:

> (1)     that plaintiff belongs to a protected group;
> (2)     that she was subjected to unwelcome harassment;
> (3)     the harassment complained of was based on sex [here, pregnancy];
> (4)     the harassment affected a term, condition, or privilege of her employment; and
> (5)     her employer knew or should have known of the harassment and failed to take prompt remedial action.[84]

Plaintiff relies on the same allegations of fact discussed above to support her hostile

work environment claim.[85]  Plaintiff alleges that her coworkers accused her of faking her illness

in order to avoid her job duties.

---

[83] <u>Int'l. Union v. Johnson Controls</u>, 499 U.S. 187 (1991).
[84] <u>Hockman v. Westward Communs.</u>, LLC, 407 F.3d 317, 325 (5th Cir. 2004) citing <u>Jones v. Flagship Int'l.</u>, 793 F.2d 714, 719-20 (5th Cir. 1986).

In order for harassment to affect a term, condition or privilege of employment, it must be both objectively and subjectively abusive.[86]  In order to determine the element of objective hostility, the court considers five factors:  (1) the frequency of the discriminatory conduct; (2) the severity of the discriminatory conduct; (3) whether it is physically threatening or humiliating as opposed to merely offensive; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether the conduct undermines the plaintiff's workplace competence.[87]

American Eagle asserts that Plaintiff's allegations of harassment, when taken as true for the purposes of this motion, do not rise to the level which may be considered as affecting a term or condition of employment under Fifth Circuit jurisprudence and, thus, Plaintiff is unable to satisfy prong four of her prima facie burden as to this claim.[88]  American Eagle also asserts that, to the extent that Plaintiff's claim is premised on the denial of light duty status, Moret's denial of that status was not based on pregnancy, as has been discussed in reference to Plaintiff's discrimination claim above.[89]

---

[85] Though Plaintiff also alleges that her employer's suggestion that Plaintiff take unpaid medical leave if she was unable to perform the duties of her job constitutes harassment for the purposes of this claim [R. 43 at p. 12], we have already held that PDA does not require employers to overlook an employee's incapacity to perform essential job duties while pregnant and, thus, Plaintiff's employer is within its rights to require that she be able to perform her duties.
[86] Hockman, 407 F.3d at 325 citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993) and Butler v. Ysleta Indep. Sch. Dist., 161 F.3d 263, 269 (5th Cir. 1998).
[87] Id. at 326 citing Harris, 510 U.S. at 23.
[88] R. 35-2 at pp. 19-21.
[89] Id. at pp. 18-19.

Defendant cites five (5) Fifth Circuit rulings in which the appellate court concluded that the conduct alleged did not rise to the level of severe or pervasive harassment which affects a term or condition of employment.[90]  Plaintiff cites no cases in opposition.

The court has carefully reviewed the substance of Plaintiff's allegations and, taking each allegation as true for these purposes, finds that they simply do not rise to the level required to fulfill her burden under the fourth prong of her prima facie burden.  Addressing her hostile work environment claim, Plaintiff asserts that she was accused of faking her illness by co-workers on "several occasions" and, later in the same paragraph, describes these incidents as being taunted by them "constantly[.]"[91]  The allegations of harassment listed by plaintiff in support of her hostile work environment claim are as follows:

(1)  being accused of faking her illness by co-workers on "several occasions";[92]

(2)  Moret suggesting that Plaintiff take unpaid medical leave if she was unable to perform her job duties;

(3)  Moret requiring Plaintiff to produce documentation from her physician stating that she was not under any physician's restrictions with respect to her ability to perform the duties of her job; and

---

[90] Id. at pp. 19-20 citing White v. GEICO, 457 Fed. Appx. 374 (5th Cir. 2012); Roberts v. Unitrin Specialty Ins. Co., 405 Fed. Appx. 874 (5th Cir. 2010); Barnett v. Boeing Co., 306 Fed. Appx. 875 (5th Cir. 2009); Earle v. Aramark Corp., 247 Fed. Appx. 519 (5th Cir. 2007); Hockman, 407 F.3d at 320.

[91] R. 43 at p. 12.

[92] Within the same paragraph, Plaintiff restates the same allegation as "Plaintiff was constantly taunted by her co-workers who believed her illness to be a lie."  [R. 43 at p. 12]  This sentence is the only instance in the entirety of the briefs and evidence before this court characterizing the alleged harassment in this manner.  Plaintiff's own testimony contradicts this statement, detailing several specific instances where coworkers expressed their belief that she was malingering.  We do not find that a reasonable fact finder could base a verdict for or against any party on a single statement, regardless of the believability of that statement.  Therefore, we make no judgment as to credibility, but only as to the sufficiency of the evidence under the standard.  Dendy v. Lee, 251 Fed. Appx. 285 (5th Cir. 2007) (a single statement is insufficient evidence upon which a reasonable jury might base a ruling).

(4)  Moret's "combative nature" over email with Plaintiff after Plaintiff's daughter was
     born.

None of these allegation are severe or pervasive enough in nature that they may fairly

be said to have impacted a term or condition of Plaintiff's employment.  Moreover, as stated

above, American Eagle is within its rights as an employer to require Plaintiff to perform the

essential duties of her job and, thus, we do not find that Plaintiff has proved that Moret's

alleged conduct in explaining to Plaintiff that she may need to take unpaid medical leave if she

is unable to perform those duties and requiring Plaintiff to produce documentation that her

physician has not placed any restrictions on her ability to perform the essential duties of her job

constitutes harassment as a matter of law.  Taking as true Plaintiff's assertions regarding

Moret's conduct via email and the alleged harassment by coworkers, we find that Plaintiff's

allegations fail to meet her burden of proof as a matter of law.

Plaintiff's brief characterizes the behavior of her coworkers and supervisor during her

pregnancy as "inappropriate and uncompassionate" and, taken as true, these allegations simply

do not make out a Title VII claim.  As cited by Defendant, Title VII is not a civility code and does

not insure that employees will not meet with unpleasant, offensive or uncivil conduct in the

workplace.[93]  The conduct alleged in this case has not been shown to have been the sort of

severe, pervasive, threatening conduct which has been viewed by the Fifth Circuit as sufficient

to make out a Title VII hostile work environment claim.

Defendant's motion next asserts that, even if Plaintiff could meet her prima facie

burden as to this claim, Defendant would still be entitled to summary judgment because of its

---

[93] Faragher v. City of Boca Raton, 524 U.S. 775, 788  (1998); Jackson v. City of Killeen, 654 F.2d 1181, 1186 (5th Cir.
1981).

Faragher/Ellerth defense, in which it must demonstrate that American Eagle had policies or remedial measures designed to prevent harassment and Plaintiff failed to avail herself of these policies or measures.[94]  Defendant submits evidence regarding its policies on the prohibition of harassment in the workplace and the procedures for reporting of any harassment.[95]  Defendant asserts that Plaintiff did not avail herself of these policies or reporting procedures as to any alleged harassment except the denial of light duty status by Moret.[96]  As noted several times above, we agree that the PDA does not mandate the availability of light duty status for Plaintiff in this case, so the denial of light duty status, without proof that such status was extended to others resulting in disparate treatment, does not constitute harassment or other actionable conduct under Title VII.

Defendant points out that Plaintiff admits that she did not notify Human Resources or her superiors regarding any other alleged harassment and argues that, under Faragher/Ellerth, it is entitled to summary judgment on Plaintiff's hostile work environment claim, assuming Plaintiff is able to meet her prima facie burden.  Defendant cites Plaintiff's own testimony stating that she felt only one of her coworkers knew that she was unhappy in her employment and that her resignation probably came as a surprise to her superiors.[97]

Plaintiff offers no argument or evidence to rebut Defendant's argument that she failed to report any alleged harassment by her coworkers or that she was ill the day of her training in Dallas to her supervisor or to Human Resources.[98]  While the absence of a response to a motion or an argument does not necessarily result in entitlement to summary judgment for the moving

---

[94] Burlington Indus. V. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).
[95] R. 35-3 at 42, 45-47.
[96] R. 35-2 at p. 21.
[97] R. 35-3 at 128.
[98] See, R. 43 at pp. 12-13, containing Plaintiff's argument as to hostile work environment.

party, it is not this court's responsibility to search through the record for evidence to support the nonmoving party's case once a motion for summary judgment is made and properly supported.  The nonmoving party must respond by arguing specific facts and cite specific evidence to support those factual allegations.[99]

For these reasons, we find that Defendant's motion should be granted as to Plaintiff's Title VII hostile work environment claim.

### Failure to Mitigate Damages

Defendant's motion asserts, lastly, that Plaintiff has not searched for employment since resigning her position with American Eagle in March of 2010.  Defendant asserts that, under these facts, Plaintiff has failed to mitigate her damages and, for this reason, should be barred from seeking back pay damages from the date of any constructive discharge.

A plaintiff claiming Title VII discharge has a duty to mitigate her damages.  The burden is on the Defendant to prove that the plaintiff failed to mitigate her damages by demonstrating that comparable work was available and the plaintiff failed to use reasonable diligence to obtain it.  If, however, the defendant employer can show that the plaintiff did not exercise reasonable diligence, the employer need not show the availability of comparable employment.[100]

Defendant offers Plaintiff's own testimony to the effect that she has not applied for a single job since she quit working for American Eagle as evidence that Plaintiff has not exercised reasonable diligence in pursuing comparable employment.[101]  Plaintiff argues that she has been

---

[99] Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).
[100] Sellers v. Delgado Community College, 839 F.2d 1132 (5th Cir. 1988).
[101] R. 35-3 at 28:7-10.

unable to seek employment because of her daughter's health conditions, which were caused by the premature birth which, Plaintiff alleges, was brought on by the actions of Defendant.

As detailed above, this court has already found that Plaintiff's Title VII claims fail as a matter of law. Neither the denial of light duty status, nor the alleged incidents of harassment constitute actionable Title VII conduct. Thus, the issue of mitigation of damages is, in reality, moot. Were we to find that Plaintiff had one or more surviving Title VII claims, however, we would find that the record is insufficient to enable us to determine whether Plaintiff has or has not mitigated her damages in this case, given the unspecified health concerns of her child. We note, again, however, that we do not reach this issue in earnest because it is made moot by virtue of our findings as to Plaintiff's Title VII claims.

### Louisiana Employment Discrimination Claims

As noted at the beginning of this ruling, Plaintiff's complaint alleges violations of both state and federal anti-discrimination law. Louisiana employment discrimination law claims are analyzed under the same framework as federal claims of the same nature.[102] Thus, the outcome of our evaluation of Plaintiff's Louisiana law claims is identical to that reached after analysis of her federal claims.

### III.  CONCLUSION

The court has carefully considered the law and argument advanced by the parties and finds that Plaintiff's Title VII claims of discrimination and hostile work environment fail as a matter of law, making summary judgment in favor of Defendant appropriate at this time. Specifically, the court finds that Moret's denial of light duty status did not constitute

---

[102] King v. Phelps Dunbar, LLP, 743 So.2d 181 (La. 1999).

discrimination in violation of the PDA and did not result in an adverse employment action under the theory of constructive discharge.  Similarly, we find that the incidents of alleged harassment, when taken as true for purposes of this motion, are not sufficiently severe, pervasive or oppressive so as to alter a term or condition of work for purposes of a hostile work environment claim.  Finally, though the court need not address the issue in light of our other findings, we find that, were Plaintiff to possess surviving Title VII claims in this case, we deem the evidence before us insufficient to enable any finding  as to whether or not Plaintiff mitigated her damages in this case.

The court will issue a Judgment in conformity with these findings.

Alexandria, Louisiana
December 22 , 2014

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT COURT